IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Keviuntae Hytower | Crim. No. 4:11-cr-02247-TLW |
| v. | |
| United States of America | **ORDER** |

This matter comes before the Court for consideration of Defendant Keviuntae Hytower's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 183. For the reasons below, his motion is denied.

## BACKGROUND

On July 24, 2012, Hytower was named as the sole defendant in a three count Indictment charging him with offenses related to his distribution of illegal narcotics. ECF No. 57. Specifically, Count 1 charged him with conspiracy to possess with intent to distribute and distribution of heroin and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.*; *see also* Presentence Investigation Report, ECF No. 123, ¶ 2. Count 2 charged him with possession with intent to distribute and distribution ("PWID") of a quantity of heroin and a quantity of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846 and 851, and Count 3 charged him being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). *Id.*; PSR ¶¶ 3–4.

On October 24, 2012, Hytower entered a plea agreement with the Government, whereby he pled guilty to Count 2, which charged him with PWID heroin and cocaine base. ECF No. 103. In exchange for his plea, the Government

agreed to drop the conspiracy charge (Count 1) and the felon in possession charge (Count 3). *Id.* On March 26, 2013, the Court sentenced Hytower as a career offender to 192 months incarceration. ECF No. 120. He did not file a direct appeal.

On March 25, 2014, Hytower filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255. ECF No. 129. Relevant for the Court's purposes here, Hytower's petition collaterally attacked his classification as a career offender, asserting that he did not have the necessary predicate felony convictions for career offender status. *Id.* at 3–6. In adjudicating Hytower's habeas petition, the Court carefully analyzed each of his predicate convictions and found that they were properly classified as career offender predicates. ECF No. 156 at 6–9. The Court therefore denied his § 2255 petition. *Id.* Hytower appealed, and the United States Court of Appeal dismissed his appeal, denying him a certificate of appealability. ECF Nos. 164 & 181.

Hytower filed his motion for compassionate release on October 21, 2021. ECF No. 183. The Government opposes Hytower's motion. ECF No. 264. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is

consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and

compelling reasons warranting a sentence reduction is a reduction is a question first determined within the sound discretion of the district court.

**DISCUSSION**

To provide context to both Hytower's motion and the Court's decision, the Court will first review the offense conduct establishing Hytower's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

## I.     THE OFFENSE CONDUCT

From approximately 2006 until his arrest on state drug charges in October of 2011, Hytower was involved in the distribution of illegal drugs in Myrtle Beach, South Carolina. *Id.* ¶¶ 9 & 30

On March 25, 2010, law enforcement officers responded to reports of a disturbance at a hotel room in Myrtle Beach. *Id.* ¶ 10. When they arrived, officers found that the hotel room was occupied by a woman and contained a substantial amount illegal drugs. *Id.* The officers informed the woman of her *Miranda* rights, which she waived. *Id.* She then told officers that the room was part of a drug dealing operation, wherein her sister would rent hotel rooms for her boyfriend and Hytower. *Id.* Her sister would then spend the night in the hotel room with her boyfriend and leave the next day. *Id.* After she left, Hytower would arrive, and he and her sister's boyfriend would deal drugs out of the hotel room. *Id.*

Based on this statement, officers obtained a search warrant of the hotel room. *Id.* ¶ 11. Execution of the search warrant revealed the following items indicative of

the distribution of illegal drugs: (1) two baggies containing 11.46 grams of marijuana, (2) 249 wax paper envelopes containing approximately 66 grams of heroin, (3) a gallon zip-lock bag containing 1,119 pieces of aluminum foil wrappers containing 212 grams of heroin, (4) a plastic tube containing 1.55 grams of crack cocaine, (5) $1,030.00 in cash, (6) a set of digital scales, and (7) a backpack containing several items related to the distribution and packaging of heroin. *Id.* Additionally, two shoe boxes were discovered. *Id.* Contained inside were pictures, personal information, and other items identifying Hytower. *Id.*

On April 8, 2010, Hytower was arrested in connection to the illegal drugs discovered during the execution of the search warrant of the hotel room. *Id.* ¶ 13. Hytower was charged with (1) trafficking heroin, (2) distribution of cocaine based, 3rd offense, and (3) PWID marijuana.[1] *Id.* When he was arrested, officers informed Hytower of his *Miranda* rights. *Id.* He chose to waive his rights and admitted to being involved in the drug dealing activity. *Id.*

Despite his arrest, Hytower continued to deal drugs while his state charges were pending. *Id.* ¶ 14. On September 26, 2011, he sold .6 grams of crack cocaine and 3.3. grams of heroin to a confidential informant working for state law enforcement. *Id.* As a result of this sale, officers obtained and executed a warrant of Hytower's residence. *Id.* ¶ 15. During the execution of the search warrant, officers discovered the following items: (1) less than one gram of crack cocaine in Hytower's bedroom, (2) two balloons containing approximately 1.6 grams of heroin, (3) a book

---

[1] These charges were later *nolle prossed* on May 21, 2012 based on the instant federal charges.

with a hidden compartment containing a loaded Taurus .380 caliber handgun, (4) a large plate containing drug residue and a razor blade, (5) a digital scale in Hytower's bathroom, (6) 1.1 grams of heroin and ½ gram of marijuana in the television stand, and (7) a second digital scale on top of the refrigerator. *Id.* The Taurus handgun came back as a stolen firearm. *Id.* As a result, Hytower was charged with additional drug and firearms counts. *Id.*

After executing the search warrant, officers interviewed several cooperating and historical witnesses. *Id.* ¶¶ 19–23. These witnesses indicated that Hytower was a long-term, significant drug dealer and frequently possessed a firearm while dealing drugs. *Id.* As a result of both the witness statements and the search warrants, Hytower was held accountable for a conservative estimate of 11.96 grams of marijuana, 2,344 grams of heroin, and 1,050.6 grams of crack cocaine. *Id.* ¶ 23. The total converted drug weight was 6,095.70 kilograms of marijuana. *Id.*

Hytower was named as the sole-defendant in a three count Indictment in July 2012. He pled guilty to Count 2, which charged him with PWID heroin and cocaine base. In exchange for his plea, the Government agreed to drop the drug conspiracy charge (Count 1) and the felon in possession charge (Count 3). *Id.* In March 2013, Hytower was sentenced to 192 months incarceration based on his status as a career offender.

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Hytower's motion for compassionate release, the Court will first review the arguments raised by both Hytower and the

Government. *See* ECF Nos. 183 & 188.

### A.    *Hytower's Arguments in Support of His Motion*

Hytower requests that the Court grant his motion based on his assertion that he can establish "extraordinary and compelling reasons" warranting relief as required by § 3582. ECF No. 183. Specifically, Hytower asserts four grounds purportedly constituting "extraordinary and compelling reasons." *Id.* They are (1) the eventual incapacity of his child's caregiver, (2) his asserted rehabilitation, (3) his underlying health conditions in the face of the COVID-19 pandemic, and (4) sentencing disparity based on his career offender status. *Id.* at 4–12. Additionally, Hytower asserts that the 18 U.S.C. § 3553(a) sentencing factors do not weigh against his request for a reduction in his sentence. *Id.* at 1–4. For relief, Hytower requests that he be resentenced to a non-custodial sentence. *Id.*

### B.    *The Government's Opposition*

The Government opposes Hytower's motion on two independent grounds. ECF No. 188. Initially, the Government asserts that Hytower has not presented "extraordinary and compelling reasons" warranting relief. *Id.* at 8. Additionally, and alternatively, the Government argues that even if Hytower could meet the "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in his sentence. *Id.*

### III.    THE COURT'S REVIEW

Before filing his motion for compassionate release, Hytower first requested a sentence reduction from the warden of his detention facility. ECF No. 183–1. That

request was denied. *Id.* Thus, Hytower has satisfied the administrative exhaustion requirement for filing a motion for compassionate release in federal court. *Id.* Therefore, the Court must determine (1) whether Hytower has established the existence of "extraordinary and compelling reasons" in favor of a sentence reduction under § 3582(c)(1)(A), and (2) if so, whether granting compassionate release is consistent with the sentencing factors set forth in § 3553(a).

A.   *The "Extraordinary and Compelling Reasons" Standard*

Hytower's motion asserts four arguments for establishing "extraordinary and compelling reasons." They are (1) the eventual incapacity of his child's caregiver, (2) his asserted rehabilitation, (3) his underlying health conditions in the face of the COVID-19 pandemic, and (4) asserted disparities in his sentence based on his career offender status. The Court will address each argument in turn.

i.   *The potential eventual incapacitation of the caregiver to Hytower's minor child is not an "extraordinary and compelling reason" in this case.*

Hytower's first ground for compassionate release asserts that a reduction in his sentence is warranted based on the eventual incapacitation of his minor child's caregiver. ECF No. 183 at 4. According to Hytower, his child is in the care of the child's grandmother. *Id.* Hytower states that he has recently been informed that his child's grandmother "has been diagnosed with [a] medical condition that *will eventually* render her incapable of continuing as a caregiver to Mr. Hytower's minor child [.]" *Id.* at 5 (emphasis added). Based on this eventual incapacitation, Hytower requests that the Court grant him a non-custodial sentence. *Id.*

Although not controlling as to prisoner-filed motions, the Sentencing Commission's policy statement contained in United States Sentencing Guideline § 1B1.13 provides "helpful guidance" related to compassionate release motions based on family circumstances. *See McCoy*, 981 F.3d at 282 & n.7. In that policy statement, the United States Sentencing Commission provides that "Family Circumstances" may constitute an "extraordinary and compelling reason" for compassionate release in instances of "death or incapacitation of the caregiver of the defendant's minor child or children" or when "[t]he incapacitation of the defendant's spouse or registered partner" would leave the defendant their "only available caregiver." U.S.S.G. § 1B1.13(1)(C) (emphasis added). In order to be "incapacitated," a minor child's caregiver must have "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *See* BOP Program Statement § 5050.50. "The BOP Program Statement says that information and documentation must show the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan." *United States v. Reyes*, No. 5:08-CR-0367-D, 2021 WL 5169282, at *4 (E.D.N.C. Nov. 5, 2021), *appeal dismissed*, No. 21-7604, 2022 WL 1554989 (4th Cir. Feb. 2, 2022).

Here, Hytower has failed to show that the potential incapacitation of his child's caregiver establishes "extraordinary and compelling reason" for reducing his

sentence in this case. First, he has not provided any documentation that his child's grandmother is incapacited, *i.e.*, that she "suffered a severe injury . . . or suffers from a severe illness . . . that renders [her] incapable of caring for [his] child." *Reyes*, 2021 WL 5169282, at *4. Instead, He conclusory asserts that his child's caregiver "has been diagnosed with [a] medical condition that will *eventually* render her incapable of continuing as caregiver to Mr. Hytower's minor child." ECF No. 183 at 5 (emphasis added).

Second, in order to establish an "extraordinary and compelling reason," Hytower is required to show that his child's caregiver *is* incapacitated. *See* U.S.S.G. § 1B1.13(1)(C) (noting "Family Circumstances" *may* constitute an extraordinary and compelling reason for compassionate release in instances of "death or *incapacitation* of the caregiver of the defendant's minor child or children") (emphasis added). Here, Hytower has not made this showing. He does not allege or show that his child's caregiver *is* incapacitated. Instead, he only asserts that "medical conditions will *eventually* render her incapable" of serving as his minor child's caregiver. ECF No. 183 at 5 (emphasis added). He is required to show actual incapacitation.

Finally, to establish an "extraordinary and compelling reason," Hytower must show that he is his minor child's *only available* caregiver. *See* U.S.S.G. § 1B1.13(1)(C). He has not made this showing. Besides the child's grandmother, Hytower notes that the child's mother is incapable of carrying for him. However, he has not shown that in such circumstances he is the *only* available caregiver, *i.e.*, that is that there are no other family members available to care for the child outside

of its grandmother and mother.

Based on the above analysis, the Court concludes that Hytower has not made the required showings for establishing an "extraordinary and compelling reason" based on his asserted need to care for his minor child. Accordingly, the Court concludes that Hytower's first argument does not rise to establishing an "extraordinary and compelling reason" in this case. Moreover, even if the Court were to find these circumstances "extraordinary and compelling," it would still deny Hytower's motion based on the § 3553(a) factors.

ii.    *Hytower's asserted rehabilitation is not an "extraordinary and compelling reason" warranting a reduction in his sentence.*

Hytower's second argument for compassionate release asserts that his post-sentencing rehabilitation constitutes an "extraordinary and compelling reason" warranting a reduction in his sentence. ECF No. 183 at 6. While appropriate for considering his § 3582 motion, the Court concludes that rehabilitation standing alone is not a basis for establishing "extraordinary and compelling reasons" warranting a reduction in Hytower's sentence. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). That said, the Court will consider Hytower's efforts at rehabilitation when weighing the § 3553(a) sentencing factors. Finally, even if the Court were to find Hytower's rehabilitation "extraordinary and compelling," it would still deny his motion based on the § 3553(a) factors.

### iii.   <u>The threat of COVID-19 does not present an "extraordinary and compelling reason" warranting a reduction in Hytower's sentence.</u>

Hytower's third argument asserts that he can establish "extraordinary and compelling reasons" based on the threat presented by the COVID-19 pandemic when coupled with his asserted medical risks, specifically, obesity and type 2 diabetes mellitus. ECF No. 183 at 7. After reviewing the parties' arguments in conjunction with Hytower's medical records, the Court concludes that he has not shown that the COVID-19 pandemic presents an "extraordinary and compelling reason" warranting the reduction of his sentence.

"The COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction." *United States v. Walker*, No. 3:20-CR-107-MOC-3, 2022 WL 1462270, at *3 (W.D.N.C. May 9, 2022); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). This holds especially true following the introduction of several effective COVID-19 vaccines. Although the Fourth Circuit has so far not established a *per se* rule that the availability of the COVID-19 vaccine precludes compassionate release, courts in this district have held that, "[f]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Henry*, No. CR 3:17-00640-MGL-4, 2022

WL 16541161, at *2 (D.S.C. Oct. 28, 2022) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)) (internal quotations omitted); *United States v. Wolfe*, No. 6:18-CR-00582-DCC-1, 2022 WL 1204840, at *5 (D.S.C. Apr. 21, 2022); *United States v. Raap*, No. 8:18-CR-00678-DCC-1, 2021 WL 2328048, at *3 (D.S.C. June 8, 2021). Accordingly, "[f]ollowing full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced so that an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. McBride*, No. 2:09-CR-01223-DCN-1, 2023 WL 207330, at *3 (D.S.C. Jan. 17, 2023) (citations omitted). Based on this authority, the Court concludes that the risk of COVID-19 alone does not provides a strong, persuasive basis for Hytower to establish "extraordinary and compelling reasons" pursuant to § 3582.

This conclusion is bolstered by Hytower's refusal to be vaccinated against COVID-19. Hytower was offered the Pfizer-BioNTech vaccine on February 12, 2021, and refused it. ECF No. 188–1 at 127. Hytower has not provided the Court with any evidence suggesting that he has a legitimate medical justification for refusing the vaccine, yet he simultaneously argues that his "continued custodial sentence, obesity, and Type 2 diabetes mellitus presents a virtual perfect storm of conditions which constitute [an] extraordinary and compelling reason warranting compassionate release." ECF No. 183 at 8.  Despite refusing an effective vaccine against COVID-19, Hytower warns that "[t]he Court should not risk waiting to see if Petitioner catches coronavirus and experiences severe illness or death." *Id.* "While

it is true that a petitioner who declines a COVID-19 vaccine is 'within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.'" *United States v. Gibbs*, No. 2:19-CR-0348-DCN-1, 2021 WL 3419441, at *2 (D.S.C. Aug. 5, 2021) *aff'd*, No. 21-7214, 2022 WL 605637 (4th Cir. Mar. 1, 2022). As noted above, courts in this district have found that COVID-19 no longer provides an "extraordinary and compelling reason" to warrant relief given the availability of multiple, effective COVID-19 vaccines. *See supra*; *see also United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").[2] The Court is persuaded by the weight of this authority. Hytower's refusal of an effective vaccine against COVID-19 supports the Court's conclusion that COVID-19 does not present an "extraordinary and compelling reason" warranting a reduction in his sentence.[3]

---

[2] Other Courts within this circuit have done the same. *See, e.g., United States v. Swindler*, No. 7:18-CR-00768-DCC-1, 2021 WL 2374231, at *3 (D.S.C. June 10, 2021), *aff'd*, No. 21-7007, 2022 WL 205683 (4th Cir. Jan. 24, 2022) ("The undersigned agrees with the great weight of authority that Mr. Cunningham's voluntary refusal of a safe and effective vaccine must be considered as a factor in determining whether extraordinary and compelling reasons warrant his release"); *United States v. Jacobs*, 2021 U.S. Dist. LEXIS 92819, at *2 (W.D.N.C. May 17, 2021) (denying compassionate release where defendant refused COVID-19 vaccine and noting that "Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus").

[3] Although the Court respects Hytower's right to refuse vaccination, it cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while also refusing a highly effective medical intervention to reduce that risk. "In short, [a defendant] may not manufacture his own 'extraordinary and compelling' circumstance." *United States v. Griffin*, No. 4:18-CR-00089-DCC-1, 2021 WL 4411773, at *3 (D.S.C. Sept. 27, 2021) (citing

Furthermore, Hytower has not asserted that his medical conditions are being left untreated by the BOP, which is more than capable of providing him effective medical care. In fact, the Court has thoroughly reviewed Hytower's medical records, which were submitted by the Government as an exhibit. *See* ECF No. 188–1. These records reflect that the BOP is effectively treating Hytower's obesity and type 2 diabetes. Thus, even on their own, they do not rise to establish an "extraordinary and compelling reason" for a reduction in his sentence. However, even if the threat presented by COVID-19 in conjunction with Hytower's asserted medical conditions was an "extraordinary and compelling reason" for relief, the Court concludes that no reduction in his sentence would be warranted based on the reasons set forth in this order.

> iv.    <u>Hytower is not serving a disparate sentence based on his status as a career offender.</u>

Hytower's final argument asserts that he is serving a disparately long sentence based on his status as a career offender. ECF No. 183 at 9. Specifically, Hytower explains that this "disparity resulted [from his] career offender classification based on South Carolina State priors that no longer qualify as predicates." *Id.* Accordingly, Hytower posits that, "[i]f sentenced today, Mr. Hytower would not be sentenced as a career offender and would receive a much lower sentence of imprisonment than the 192-month sentence." *Id.*

The Court finds this argument is unpersuasive because, if sentenced today,

---

*United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [him] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions.")).

Hytower would remain a career offender.[4] The PSR found that Hytower had four career offender predicate offenses:

(1)  <u>Possession of Crack Cocaine With Intent to Distribute</u>. This conviction arose out of an arrest on December 16, 2000, when Hytower was 16 years old. On April 1, 2002, he was sentenced as an adult to 5 years' imprisonment suspended to 509 days imprisonment and 3 years' supervision. This conviction was in violation of S.C. Code Ann. § 44–53–375(B).

(2)  <u>Distribution of Crack Cocaine</u>. This conviction arose out of an arrest on June 20, 2001, when Hytower was 17 years old. On April 1, 2002, he was sentenced as an adult to 5 years imprisonment suspended to 509 days imprisonment and 3 years' supervision. This conviction was in violation of S.C. Code Ann. § 44–53–375(B).

(3)  <u>Distribution of Powder Cocaine (two counts)</u>. These two convictions arose out of an arrest on July 10, 2002, when Hytower was 18 years old. On January 30, 2003, he was sentenced to 5 years' imprisonment. These convictions were in violation of in violation of S.C. Code Ann. § 44–53–370(a)-(b).

(4)  <u>Manufacture, Distribute, Possess Narcotic Drugs in Schedule I(b), LSD, and Schedule II (Heroin)</u>. This conviction arose out of an arrest on May 8, 2007, when Hytower was 23 years old. On October 21, 2008, he was sentenced to 10 years imprisonment suspended to 5 years' probation. These convictions were in violation of in violation of S.C. Code Ann. § 44–53–370(a)-(b).

PSR ¶¶ 31, 33, 35 & 37,

Pursuant to United States Sentencing Guidelines § 4B1.1(a), a defendant is a career offender if each of the following elements is met:

(1)  The defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2)  The instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

---

[4] As noted, the Court has previously addressed this argument on the merits in denying Hytower's § 2255 petition. *See* ECF No. 156.

(3)    The defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Hytower asserts that, if sentenced today, the third element for career offender status could no longer be met because his prior South Carolina drug offenses are longer "controlled substance offenses" because the "South Carolina statutes in connection to priors used for enhancement purposes criminalize 'a greater swath of conduct' than the elements of the relevant Guidelines." ECF No. 183 at 10. Specifically, Hytower asserts the "South Carolina statutes of conviction S.C. Ann. Code 44-53-370, as well as 44-5-375, include 'delivery' as means to violate statute in additional means attributing to over broadness of statute are to create and purchase." *Id.* Thus, Hytower argues he would no longer be a career offender if sentenced today because violations of the South Carolina statutes of conviction are no longer "controlled substance offenses."

The Court has thoroughly reviewed Hytower's argument and is unpersuaded, as illustrated by the application of the three requirements for career offender designation to the facts of this case. First, Hytower was at least 18 years old at the time of the instant offense of conviction. *See* U.S.S.G. § 4B1.1(a)(1). Specifically, he was 26 when he was indicted on federal charges. *See generally* PSR at 2. Second, the instant offense of conviction, PWID of a quantity of heroin and a quantity of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846 and 851, is a "controlled substance offense." *United States v. Groves*, 65 F.4th 166, 168 (4th Cir. 2023) (holding that federal distribution offenses under § 841(a)(1) are categorically "controlled substance offenses.").

Hytower asserts that, if sentenced today, the third element for career offender status could not be established. As noted, the PSR set forth four prior convictions, each of which were career offender predicates at the time of sentencing because they were "controlled substance offenses." To find that the Hytower would remain a career offender today, the Court need only to conclude that only two of these four convictions remain career offender predicates. *See* U.S.S.G. § 4B1.1(a)(3) (requiring two prior career offender predicates). Here, all four of Hytower's South Carolina drug distribution convictions would remain career offender predicates today. The Court will discuss the two statutes of convictions for these predicates, S.C. Code Ann. § 44–53–370 and S.C. Code Ann. § 44–53–375 in turn.

First, Hytower's two convictions for violations of § 44–53–375, which criminalizes distribution offenses related to crack cocaine. In analyzing whether Hytower's two convictions under this statute would remain career offender predicates today, the Court looks to the Fourth Circuit's recent decision in *United States v. Davis*, 75 F.4th 428 (4th Cir. 2023). In *Davis*, the defendant was convicted on narcotics and firearms charges. *Id.* at 431. He was sentenced as a career offender based, in part, on four South Carolina felony convictions for distribution of crack cocaine in violation of S.C. Code Ann. § 44–53–375—the statute at issue here. *Id.* On appeal, the defendant asserted that the district court improperly designated him as a career offender because his four prior convictions for distribution of crack cocaine in violation of § 44–53–375 did not constitute "controlled substance offenses." *Id.* at 440–41. The Fourth Circuit rejected this argument, holding:

a section 44-53-375(B) distribution offense is not categorically disqualified from being treated as a Guidelines "controlled substance offense." As a result of that ruling, [the defendant's] contention that four of his prior drug distribution convictions—as punished by section 44-53-375(B) of the South Carolina Code—is without merit. The district court thus did not err by deeming [the defendant] to be a Guidelines career offender.

*Id.* at 445.

The Fourth Circuit's holding in *Davis* forecloses Hytower's challenge to his challenge to his two convictions under § 44–53–375. Like the defendant in *Davis*, Hytower has two prior South Carolina distribution convictions in violation of § 44–53–375. These offenses are categorically "controlled substance offenses." They are, therefore, valid career offender predicates.

This conclusion is fatal to Hytower's challenge to his career offender status because the Court need only to determine that two of his four convictions remain valid career offender predicates today. However, the Court finds it necessary to address Hytower's two convictions under S.C. Code Ann. § 44–53–370 because, even if his convictions under § 44–53–375 were not career offender predicates—which they are—his convictions under § 44–53–370 remain valid predicates thus foreclosing his challenge to his career offender status on alternative grounds.

As noted by the Fourth Circuit, § 44–53–370 and § 44–53–375 are "almost identical." *United States v. Furlow*, 928 F.3d 311, 320 (4th Cir. 2019), *vacated and remanded on other grounds*, 140 S. Ct. 2824, 207 L. Ed. 2d 157 (2020). "[T]he sole distinction between section 44–53–370(a)(1) and section 44–53–375(b) is that the former applies to all controlled substances and controlled substance analogues,

while the latter concerns specifically methamphetamine and crack cocaine." *Id.* In adjudicating whether defendants sentenced as career offenders based on prior convictions of § 44–53–370 would remain career offenders if sentenced today, the Fourth Circuit has repeatedly, and consistently, held that a prior conviction for a violation of § 44–53–370 remains a "controlled substance offense" and thus, a career predicate. *See id* (citing with approval *United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018) (unpublished) (holding that offenses in violation of S.C. Code Ann. § 44–53–370 are "controlled substance offenses")).[5] Based on this weight of authority, the Court concludes that Hytower's two convictions for violations of § 44–53–370 would remain career offender predicates if he was sentenced today because they remain "controlled substance offenses."

The Court concludes Hytower would remain a career offender today. As illustrated, each of his four prior South Carolina drug distribution offenses remain a "controlled substance offense." He thus still satisfies the third requirement for career offender status because he has four valid career offender predicates. Accordingly, the Court concludes that Hytower cannot establish "extraordinary and compelling reasons" based on his status of a career offender because he would remain a career offender if sentenced today.

---

[5] *See also United States v. Enoch*, 829 F. App'x 651, 652 (4th Cir. 2020) (per curiam); *United States v. Goodwin*, 811 F. App'x 870 (4th Cir. 2020) (per curiam); *United States v. Rivers*, 794 F. App'x 275, 278 (4th Cir. 2020) (per curiam); *United States v. Adams*, 788 F. App'x 198, 200 (4th Cir. 2019) (per curiam); *United States v. Simmons*, 796 F. App'x 163, 166 (4th Cir. 2019) (per curiam); *United States v. Kershaw*, 779 F. App'x 172, 174 (4th Cir. 2019) (per curiam); *United States v. Hunt*, 774 F. App'x 806, 808 (4th Cir. 2019) (per curiam).

B.    *The Court's review of the § 3553(a) factors*

Assuming Hytower were able to establish "extraordinary and compelling reasons," the Court concludes that it would still be appropriate to deny his motion for compassionate release based on its analysis and balancing of the § 3553(a) factors. The Court has balanced these factors in light of the compassionate release issues not in play at Hytower's original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

First, the Court concludes that "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against a reduction in Hytower's sentence. 18 U.S.C. § 3553(a)(1). In conjunction with this factor, it is appropriate to separately highlight the facts of the instant offense followed by an accounting of Hytower's criminal history.

The instant offense conduct is outlined in Paragraphs 8–23 of the PSR. The Court incorporates these paragraphs in this order by reference. As outlined in detail above, Hytower was involved in the distribution of crack cocaine and heroin in Myrtle Beach, South Carolina. PSR ¶ 9. He was arrested in connection to the distribution of a large quantity of illegal drugs out of a hotel room. *Id.* ¶ 11. Following his arrest, Hytower continued to participate in distributing illegal drugs and sold crack cocaine and heroin to a confidential informant. *Id.* ¶ 9. The execution of two separate search warrants in connection to Hytower's drug dealing activities uncovered an illegal, stolen firearm, a significant quantity of illegal drugs, drug paraphernalia, and evidence connecting Hytower to the seized items. *Id.* Ultimately,

Hytower was held accountable for a conservative estimate of 11.96 grams of marijuana, 2,344 grams of heroin, and 1,050.6 grams of crack cocaine. *Id.* ¶ 23. The total converted drug weight was 6,095.70 kilograms of marijuana. *Id.* Notably, the offense conduct occurred while Hytower was on state probation. *Id.* ¶ 40.

Turning to the second part of § 3553(a)(1), which looks at the "history and characteristics of the defendant," the Court will next review Hytower's prior criminal history. 18 U.S.C. § 3553(a)(1). Before his instant federal convictions, Hytower's criminal history spanned over a decade. In 1997—at the age of 13— Hytower was convicted of grand larceny and threatening a public official. *Id.* ¶ 29. For these offenses, he was committed to the South Carolina Department of Juvenile Justice for a term not to exceed his 21st birthday. *Id.* However, this sentence was suspended upon the service of one year of probation. *Id.* Hytower's probation was revoked after six months following a school suspension for being disruptive, fighting, being unwilling to follow rules, cursing, and threatening school staff. *Id.* He then served a revocation sentence of approximately one year with the South Carolina Department of Juvenile Justice. *Id.*

In 2002, Hytower, now 18, was convicted of a 2000 charge for possession of crack cocaine, a separate 2000 charge for possession of crack cocaine with intent to distribute, and a 2001 charge for distribution of crack cocaine. *Id.* ¶ 30. For these offenses, he was sentenced to 5 years suspended upon service of 509 days and 3 years of probation. *Id.* In 2003, his probation was revoked based on his conviction for 2002 charges of two counts of distribution of powder cocaine. *Id.* ¶ 35. He was

sentenced to 5 years concurrent on each count. *Id.*

In 2008, Hytower was convicted of the manufacture, distribution, and possession of heroin. *Id.* ¶ 37. He was sentenced to 10 years imprisonment suspended upon service of 5 years' probation. *Id.* Hytower was on probation for this offense at the time of the instant federal offenses. *Id.*

Hytower's repeated drug activity demonstrates his disregard for the law and his disrespect for the community. Despite having several prior arrests for the illegal drug activity—resulting in multiple sentences of incarceration—Hytower continued to distribute illegal narcotics while on state probation. After a review of both the instant offense conduct and Hytower's criminal history, the Court concludes that § 3553(a)(1)—the history and characteristics of the defendant—weigh against a reduction in Hytower's sentence.

The Court also concludes that § 3553(a)(2), which addresses the need for the sentence imposed, weighs against a reduction in Hytower's sentence. In sum, Hytower has committed serious offenses since he was 13 years old. The instant offense of offense of conviction, PWID of a quantity of heroin and a quantity of cocaine base, occurred while Hytower was on state parole. Probation and parole have not deterred Hytower's criminal activities. As noted, he has twice had his state probation revoked. This conduct demonstrates Hytower's disrespect for the law along with his propensity to engage in criminal conduct regardless of the implications. Hytower's sentence was, and is, necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford

adequate deterrence, and to protect the public from any further crimes committed by Hytower.

The Court concludes that the next set of factors, which analyze the kinds of sentences available and the sentencing range established for a defendant's conduct, also weigh against a reduction in Hytower's sentence. *See* 18 U.S.C. § 3553(a)(3)– (4). Hytower was sentenced as a career offender. As outlined above, He has an extensive criminal history. Based on this criminal history, Hytower received 13 criminal history points.[6] PSR ¶ 39. This alone placed him in a criminal history category of VI—the highest criminal history category. *Id.* ¶ 41. When the career offender enhancement was applied, Hytower's criminal history category remained the same at VI. ¶ 42. Based on several successful objections of his attorney, Hytower's base offense level was lowered from 36 to 32. ECF No. 121. However, his career offender designation automatically made his adjusted offence level 34. PSR ¶ 60. Hytower received three-levels for acceptance of responsibility, which made his total offense level 31. *Id.* ¶ 33; ECF No. 121. Based upon a total offense level of 31 and a criminal history category of VI, Hytower's Guideline imprisonment range was 188 months to 235 months. ECF No. 121. The Court properly imposed a within Guidelines sentence of 192 months. *See* PSR ¶ 91. Accordingly, § 3553(a)(3)–(4) also weigh against a reduction in Hytower's sentence.

The Court has also carefully reviewed the records submitted by Hytower in support of his argument that he has been successfully rehabilitated. ECF No. 183–

---

[6] Hytower received two further criminal history points for committing the instant offenses while on state probation for a total of 15 criminal history points. PSR ¶ 40.

1. The records reflect that Hytower has completed programing and educational courses offered by the BOP. *Id.* These records reflect his efforts at rehabilitation. However, Hytower's inmate discipline date reveals extensive disciplinary issues while incarcerated—some of which occurred after he filed his motion for compassionate release. ECF No. 188–2. Specifically, Hytower has received infractions for: (1) possessing an unauthorized item in 2022, (2) refusing to obey an order in 2022, (3) being insolent to a staff member in 2021, (4) destroying property, (5) possession an authorized item in 2018, (6) threatening bodily harm in 2014, and being insolent to a staff member in 2014. *Id.* The Court concludes that this extensive disciplinary history also weighs against release and shows a continuing disrespect for the law. In sum, Hytower committed serious crimes, including both the instant offenses and his past offenses. He has continued to have disciplinary issues while incarcerated. His rehabilitative efforts do not outweigh his repetitive contempt for the law that he exhibited before—and now during—his incarceration.

The Court has carefully weighed the relevant § 3553(a) factors and bases its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. It involved the distribution of illegal narcotics. Hytower illegally possessed a firearm in connection with his drug dealing activities. He also continued to sell drugs after his initial arrest on drug charges by selling drugs to a confidential informant. When this conduct is coupled with Hytower's prior criminal history, including his previous sentences of incarceration, the record before the Court clearly demonstrates his continued disregard for the law. Based on the above

analysis, the Court finds that the § 3553(a) factors weigh against Hytower's request for relief. Accordingly, the Court concludes a sentence reduction is not appropriate.

<u>CONCLUSION</u>

The Court concludes that Hytower's motion for compassionate release should be denied. He has not established "extraordinary and compelling reasons" warranting relief. Additionally, even if he had, his motion would still be denied based on the Court's analysis and balancing of the § 3553(a) factors. Accordingly, Hytower's motion, ECF No. 183, is denied.

**IT IS SO ORDERED.**

_s/ Terry L. Wooten_
Terry L. Wooten
Senior United States District Judge

October 13, 2023
Columbia, South Carolina